### Breslin Const. Co. v. Hamilton.

### Same v. Wilder.

March 8, 1946.

Jay W. Harlan and Edward J. Hogan for appellant.

E. C. Newlin, Jr., and Joe G. Davis for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to May 12, 1944, and for some four or more years prior thereto, the appellee, and plaintiff below, R. B. Hamilton, owned a farm on the Danville and Lancaster Pike located some four miles from Danville. Upon it was a comparatively new residence building in which he and his family resided. Adjoining his farm there was operated a rock quarry by Caldwell & Company. The appellant, Breslin Construction Company, had a contract for repairing or constructing a part of the Danville and Lancaster Pike, but for which one the record does not disclose. A necessary material for the performance of its contract was a mixture of pulverized stone with oil. It owned and used a machine by the operation of which the mixture was made. It was located some 600 feet from plaintiff's residence in a southwestern direction therefrom. Defendant began making the mixture about April 1, 1943, and continued to do so until about November 1, of the same year.

The appellee, Wilder, grew a crop of about four acres of tobacco on Hamilton's farm in the year 1943, and these two consolidated actions were filed by the respective plaintiffs in the Boyle circuit court against appellant on May 12, 1944, wherein Hamilton finally sought to recover, by the last amendment to his petition against defendant, the sum of $2,260 for damages al-

legedly inflicted upon his residence, its contents, and to his ½ interest in the crop of tobacco grown by Wilder, his tenant, by excessive quantities of the mixture and its ingredients settling on his premises.

Wilder by his petition sought to recover damages only to his part of the tobacco crop. All of the damage sought to be recovered was produced, as alleged in the respective petitions, by huge quantities of rock dust and small particles of rock, some of which was mixed with oil, and all of which landed upon the respective properties alleged to have been injured thereby. Each petition averred that the damage so produced was wrongfully caused by defendant in so permitting such substance to be carried and deposited upon the damaged property.

The only answer made by defendants in either action was: "Comes the defendant, by counsel, and for answer to plaintiffs' amended petition specifically denies each and every allegation thereof." No special demurrer was filed to either petition, nor did defendant interpose any plea in abatement to the maintenance of either action because of defective parties. A jury was empaneled to try the two cases, which the court consolidated. At the close of plaintiffs' testimony defendant moved for a peremptory instruction in its favor which the court overruled. Defendant then declined to introduce any testimony and upon submission on the proof introduced by plaintiffs alone the jury returned a verdict in favor of Hamilton in the sum of $914, and one in favor of Wilder for the sum of $250. Defendant's motion for a new trial in each case was overruled, and from the judgment against it in favor of Hamilton it prosecutes this appeal and has moved for an appeal in this court from the judgment in favor of Wilder.

Only three grounds are relied on in the motion for a new trial as alleged prejudicial errors authorizing a reversal of the judgments and which are, (1) that the verdicts are not sustained by sufficient evidence, (2) that the damages are excessive, and (3) error in the instructions given by the court. The last ground will be determined first.

The record discloses that defendant, and appellant, excepted to the ruling of the court in overruling its motion for a peremptory instruction, but that alleged error,

even if one, is not relied on in the motion for a new trial, since in that motion the objection contained in the third ground is thus stated: "Because the court erred in *giving* the instructions given to the jury, which were excepted to at the time, pertaining to the law controlling, and the measure of damages." (Our emphasis.) Not a word, nor even an indirect reference, is made therein of any error in *rejecting* the motion for a peremptory instruction. Furthermore, the record, which we have carefully read twice, contains no exceptions whatever to instructions Nos. 1 and 2 given by the court on the merits of the case. It is true that in the motion for a new trial it is stated that defendant did except to those instructions, but the record is entirely barren of any such fact, nor is it stated in the bill of exceptions approved by the court. We therefore could well dismiss ground No. 3 without further comment, since it is a well settled practice and universally followed that errors in instructions in civil cases, not excepted to by the opposing litigant, are waived.

However, if ground (3) complaining of the instructions were presented in a way to require us to consider and determine the propriety of refusing the peremptory one, then there is found in the record no support therefor. The rejection by the court of defendant's motion therefor is criticized by defendant's counsel in their brief, because the petition in each case alleged that defendant was a corporation, and that its answer—consisting only of a general denial—placed in issue the fact of defendant's status as a suable entity and required proof by plaintiffs. With that contention we do not agree. The alleged error of the failure of plaintiffs to prove that defendant was a corporation is, after all, one of defective parties reachable by a special demurrer if the defect appears upon the face of the pleadings to which the special demurrer is filed, or if not so appearing, then by a plea in abatement pursuant to the provisions of section 118 of our Civil Code of Practice. No such procedural steps were taken by defendant, and the alleged error, if one, might well be considered as waived. Moreover, the law is firmly settled (with some few scattering holdings to the contrary) that a general denial by a corporation of material allegations made against it by its adverse litigant, is not sufficient to put in issue its corporate existence, since such a denial only puts in

issue the merits of the alleged cause of action or defense.

That statement of the rule of practice is incorporated in the text of 13 Am. Jur. 1080, section 1167, a part of which says:

"It has been generally held and is the rule under some statutes that the issue of corporate existence of a plaintiff or defendant corporation cannot be raised by a general denial, but that, in order to raise the issue, the corporate existence of the plaintiff or defendant must be specifically denied. If the defendant desires to raise the issue as to the plaintiff's corporate existence, he must specially plead or aver in his answer that the plaintiff has no corporate existence and has no right to contract or sue as a corporation. It has been held that an allegation that a party is a corporation is admitted by the general issue."

In notes 16 and 17 to that text are many cases listed supporting it, one of which is an annotation in 55 A. L. R. 510. That annotation follows the Oregon case of Multorpor Co. v. Reed, 122 Or. 605, 260 P. 203, in which that sustained the rule of the cited text. The beginning of the annotations repeats, in substance, that rule with this statement:

"It has been generally held that the issue of corporate existence of a plaintiff or defendant corporation cannot be raised by a general denial, but that, in order to raise the issue, the corporate existence of the plaintiff or defendant must be specifically denied."

In support of that general statement of the correct procedure in such circumstances cases are cited from the states of Illinois, Iowa, Minnesota, Nebraska, New York, South Carolina, Washington and Wisconsin. Further along in the annotation, as well as in the text of 13 Am. Jur., it is stated, and supported by abundant authority, that even an attempted specific denial "on information and belief" is insufficient to raise the issue of corporate existence, but that it should specifically be done.

The correct practice as outlined in the text of Am. Jur., and by the annotations referred to, is in substance approved and applied by this court in the cases of Stange v. Price, 191 Ky. 734, 231 S. W. 532; Hotel, etc., Local Union v. Miller, 272 Ky. 466, 114 S. W. 2d 501;

United Mine Workers v. Cromer, 159 Ky. 605, 167 S. W. 891, and in other prior domestic cases referred to in them. In the Stange case our opinion approves this statement [191 Ky. 734, 231 S. W. 533]: "A plea in abatement offers an objection to form rather than substance, and does not deny the right of action itself, and as a general rule such a plea must give the plaintiff a better writ." We therefore conclude that the general denial of defendant in this case of the material allegations contained in the pleadings of plaintiffs applied only to the merits of the case attempted to be stated by the respective plaintiffs, and was not sufficient to raise the issue of defendant's status as an incorporated entity.

The only remaining grounds relate to the sufficiency of the evidence to sustain the verdict, and alleged excessive damages returned by the jury. We will devote but little time to either of those questions, since defendant introduced no proof whatever, contradicting that introduced by plaintiffs, which was amply sufficient to sustain the verdicts in each case. The proof showed that the accumulated dust on the growing crop of tobacco constantly continued from the day the plants were set out until the harvesting of the crop and that such conditions stunted the growth of the tobacco and seriously impaired the value of that which was realized. It is said, however, that Wilder, the exclusive grower of the tobacco, did not cultivate or look after it in the manner that should have been done, which he to some extent admits, giving as a reason therefor that the flying dust was so thick that he was unable to remain in the field, except for short periods of time, to properly care for the crop. As to the damage to Hamilton, over and above that to his share of the tobacco crop, the proof abundantly shows that his entire premises was covered with dust both inside and out of his residence, damaging the paper on the wall, window curtains, rugs, etc., located in the interior of his dwelling, and damaging the paint on his residence which had been freshly done a short time prior to the commencement of defendant's operations in April, 1943, at a cost of $200. Mechanics and painters testified showing what it would cost to restore the items of his damaged property, and they fully sustained the amount of the jury's verdict, some of the witnesses placing the damage exceeding that returned by the jury.

Plaintiffs proved, which no one denied, that com-

plaint was made to the local manager of defendant, accompanied with a request that the condition be corrected, but which was followed by no effort on its part to do so. At the same time the local manager visited the home and premises of plaintiff, Hamilton, and was made aware of the conditions there existing. It was likewise proven, without contradiction, that the operation of the quarry by Caldwell & Company contributed nothing toward enhancing the trouble complained of, since it had provided effective precautionary steps against such consequences by the erection of a tall pipe through which the damaging substance was released at a height that prevented it from settling on adjacent areas, and of which defendant necessarily possessed knowledge.

It is also argued in brief as error—though not complained of in the motion for a new trial—that plaintiffs' petitions, as well as their proof, were duplicitous in that different theories upon which the recovery was sought were misjoined and submitted to the jury which were, that the action appeared to be one for damages produced by a private nuisance, and also one for negligent operation of defendant's mixing plant, but if that argument should be held as well founded (but which we do not attempt to determine), then no motion was made by defendant requiring plaintiffs to elect upon what theory of recovery they would proceed, and because of such failure the error, if one, was waived. It is true that defendant entered motion requiring plaintiffs to make their petitions more specific which they did, by an amendment, but made no election therein as is complained of in this argument of counsel, and the amendment without such election was not objected to.

After carefully reading the record we are unable to find any prejudicial error available to appellant which would authorize a reversal of the judgments, and for which reason each of them is affirmed.